UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MR. and MRS. O, *on their own behalf and as next friends of* J.O.<br>    *Plaintiffs*,<br><br>v.<br><br>GLASTONBURY BOARD OF EDUCATION,<br>    *Defendant*. | No. 3:20-cv-00690 (VAB) |

**RULING AND ORDER ON MOTION FOR RECONSIDERATION**

On May 18, 2020, Mr. and Mrs. O. ("Plaintiffs" or "Parents") filed a lawsuit against the Board of Education of Glastonbury, Connecticut ("Defendant" or "the Board"), alleging that Glastonbury violated the right of their son ("Student") to a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) ("Section 504"). *See* Compl., ECF No. 1 (May 18, 2020) ("Compl.").

On December 29, 2021, this Court issued a Ruling and Order denying the parties' cross-motions for judgment on the administrative record. *See* Ruling and Order on Cross-Mots. for J. on the Administrative R., ECF No. 33 (Dec. 29, 2021) ("Ruling and Order"); *see also Mr. O v. Glastonbury Bd. of Educ.*, No. 3:20-CV-00690 (VAB), 2021 WL 6134691, at *1 (D. Conn. Dec. 29, 2021). The Court then remanded the case to the state administrative hearing officer for additional findings consistent with its decision. *Id*.

Parents have filed a motion for reconsideration of the Court's decision. *See* Pls.' Mot. for Recons. of Order on Mots. for J. on the Administrative R., ECF No. 36 (Jan. 12, 2022) ("Mot.

1

for Recons."); Pls.' Mem. in Supp. of Mot. for Recons., ECF No. 36-1 (Jan. 12, 2022) ("Pl. Mem."). The Board opposes this motion. *See* Glastonbury Board of Education's Opp'n to Parents' Mot. for J., ECF No. 37 (Jan. 24, 2022) ("Opp'n").

For the following reasons, the motion for reconsideration is **DENIED**.

I.     **STANDARD OF REVIEW**

Rule 59(e) of the Federal Rules of Civil Procedure allows a party to move to "alter or amend a judgment" no later than twenty-eight days after the entry of the judgment. Fed. R. Civ. P. 59(e). "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010).

"A motion for reconsideration is committed to the sound discretion of the court." *Nygren v. Greater N.Y. Mut. Ins. Co.*, No. 3:07-CV-462 (DJS), 2010 WL 3023892, at *2 (D. Conn. Aug. 2, 2010) (internal citation and quotation marks omitted); *see also Lesch v. United States*, 372 F. App'x 182, 182 (2d Cir. 2010) ("The standard of review of a district court order granting or denying a motion for [reconsideration under both Rule 59(e) and Rule 60(b)] is whether the order constituted an abuse of discretion." (citing *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999))).

II.     **DISCUSSION**

Parents have moved for reconsideration of the Court's decision on the parties' cross-motions for judgment on the administrative record, arguing that, based upon the conclusions in that decision, this Court should reverse the decision of the administrative hearing officer and

award student placement at Meliora Academy, reasonable attorney's fees and costs, and any other legal and equitable relief deemed just and proper. *See* Mot. for Recons. at 1; Pl. Mem. at 1–9.

The Court will address each of Parents' arguments, both on the procedural and substantive issues, below.

### A. Procedural Issues

In Parents' view, this Court's last decision supports that Parents were denied meaningful parental participation as defined under the IDEA, and, as a result, Parents argue that they are entitled to judgment on the administrative record. *See* Pl. Mem. at 3–5. Specifically, Parents contend that this Court should grant them judgment on the administrative record where, in its last decision, the Court noted the existence of evidence to support a claim of denial of parental participation, including indications in the administrative record that the Board did not read letters provided by Parents from Student's physicians. *See id*. at 4 (citing Ruling and Order at 17–21). This evidence in the administrative record, Parents argue, shows that the Board deprived Parents of their right to meaningful participation, resulting in a denial of FAPE. *Id*.

In response, the Board argues that Parents have failed to meet the "strict" standard for reconsideration in the Second Circuit, which requires, at a minimum, that a moving party point to controlling decisions or data that the Court overlooked. *See* Opp'n at 1–3. In addition, as to the issue of meaningful parental participation, the Board argues that reconsideration is inappropriate, where Plaintiffs do not identify authority to suggest that the Court's decision was incorrect, "nor can they, because it is a rare case where alleged procedural errors are the type to entitle parents to judgment as a matter of law." *Id*. at 3 (internal citation and quotation marks omitted). In sum, the Board contends that Parents have merely requested that the Court repeat its analysis, but

reach a different conclusion, an approach prohibited by the relevant standard on a motion for reconsideration. *Id.* at 3–4.

The Court agrees.

Plaintiffs have not presented any evidence or other relevant information not already considered by the Court, nor do they introduce any new or controlling case law that contradicts the Court's conclusion. While Plaintiffs may disagree with the Court's decision, this is insufficient to justify reconsideration. *See Mercedes Zee Corp. LLC v. Seneca Ins. Co.*, 3:14-CV-00119 (JAM), 2016 U.S. Dist. LEXIS 126029, at *3 (Sept. 16, 2016) ("The fact that counsel feels upset or disappointed with a judge's ruling is not grounds for a motion to reconsider. Nor should counsel file a motion for reconsideration on the assumption that a judge did not bother to read or understand counsel's prior pleading.").

When deciding to deny judgment as a matter of law on the procedural issues raised, the Court was cognizant that, in some cases, procedural inadequacies so seriously infringe on a parent's participation in the creation or formulation of the IEP that they constitute a denial of FAPE. *See K.R. ex rel. Matthew R. v. N.Y.C. Dep't of Educ.*, 107 F. Supp. 3d 295, 309 n.120 (S.D.N.Y. 2015); *see also Mr. P v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 748 (2d Cir. 2018) ("A procedural violation of the IDEA entitles a plaintiff to relief only if it: '(I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decision[-]making process regarding the provision of a [FAPE] to the parents' child; or (III) caused a deprivation of educational benefits.'" (quoting 20 U.S.C. § 1415(f)(3)(E)(ii)), *cert. denied*, 139 S. Ct. 322 (2018). The Court also did not exclude the possibility that such a violation occurred here.

The facts in the administrative record, however, do not allow this Court to find a

4

procedural violation resulting in a denial of FAPE as a court reviewing the issue in the first instance, as opposed to in deference to a past state administrative law judge decision. *See, e.g.*, *E.H. v. N.Y.C. Dep't of Educ.*, 164 F. Supp. 3d 539, 551–53 (S.D.N.Y. 2016) (deferring to decision of initial hearing officer, to the exclusion of a state-level appellate hearing officer, where the administrative record supported the initial hearing officer's conclusion that the Board had submitted "no evidence that the [IEP Team] considered a more restrictive setting for M.K., [and] in doing so denied the Parent of an opportunity to meaningfully participate"); *see also J.E. v. N.Y.C. Dep't of Educ.*, 229 F. Supp. 3d 223, 235–237 (S.D.N.Y. 2017) (declining to defer to opinion of state-level appellate hearing officer, where the administrative record supported the initial hearing officer's conclusion that "the [IEP Team] offered its 6:1:1 program as a matter of administrative convenience and a pre-determined outcome").

This is especially so where the Second Circuit has distinguished the seminal case on predetermination from the Sixth Circuit, *Deal v. Hamilton County Board of Education*, 392 F.3d 840 (6th Cir. 2004). In *T.P. v. Mamaroneck Union Free School District*, 554 F.3d 247 (2d Cir. 2009), the Second Circuit found no evidence of predetermination, and distinguished *Deal*, where it found that the parents had failed to demonstrate that the school district lacked an "open mind" as to the contents of the IEP and where the administrative record contained evidence that the parents "meaningfully participated" in the IEP meeting at issue. *Id*. at 253. Meaningful participation was found where, although the parents alleged predetermination as to Student's educational program, the Committee adopted several of the parents' recommendations in the IEP, including that staff observe the student over the summer and receive training on how to educate the student. *Id*. at 253.

Here, the Court's last decision did not preclude the possibility that, on remand, an

administrative law judge could find evidence of predetermination sufficient to find a denial of meaningful parent participation, and, accordingly, a FAPE denial. Further factual development, however, is required to determine whether, as a result of the alleged predetermination, the Board denied Parents meaningful participation in the creation of the IEP.

Significantly, additional factual development is required to determine whether the school district considered Parents' position before rejecting their concern about transition to a public school environment.[1] Such information is critical to decide whether predetermination occurred in the first instance, especially where, as stated in the Court's prior decision, the cases in which federal courts have granted relief as a matter of law, without deference to the initial decision of an educational hearing officer, tend to contain more conclusive evidence of predetermination than is available here—for example, record evidence of a district policy or practice against a particular form of special education placement or service. *See, e.g.*, *S.Y. v. N.Y.C. Dep't of Educ.*, 210 F. Supp. 3d 556, 573 (S.D.N.Y. 2016) (finding FAPE denial on the basis of predetermination where the administrative record showed that a proposed educational program "was rejected categorically on the ground that the DOE does not offer [the requested 8:1:3] ratio in the public schools"); *see also Deal*, 392 F.3d at 855–59 (finding predetermination where the administrative record showed that the school district "had an unofficial policy of refusing to provide one-on-one [Applied Behavior Analysis ('ABA')] programs and . . . thus did not have open minds and were

---

[1] The IEP Team meeting notes state that, in response to Parents' concern about transition to a public school environment, the head nurse stated that Student's pediatrician informed her that Student's medical issues would not prevent this change in educational placement. *See* Individualized Education Program at 2, ECF No. 26-20 (Jan. 30, 2019) ("B-46"). At the same Team meeting, however, Parents provided a letter written and signed by the pediatrician, which advised against transition to a private school environment, in light of students' unique medical and academic needs. *See id.*; *see also* Letter from Maureen Onyirimba, M.D., ECF No. 26-20 (Jan. 29, 2019) ("B-45") (stating that Student is "medically fragile" and "recommend[ing] that he remain at Meliora Academy as the appropriate placement where his medical and education needs are being met"). Further factual development about the IEP Team meeting, in addition to an opportunity to assess witness credibility, is required to determine whether this interaction supports either the Parents' or school district's position on whether meaningful parent participation and/or predetermination occurred.

6

not willing to consider the provision of such a program").

Further, while the Board has pointed to evidence in the record that it provided Parents with the results of the multidisciplinary evaluation in advance of the January 2019 IEP Team meeting, *see, e.g.*, E-mail Correspondence at 17–19, ECF No. 26-18 (January 8, 24, and 25, 2019) ("B-25"); Notice of Planning and Placement Team Meeting, ECF No. 26-18 (Jan. 3, 2019) ("B-34"), additional factual development is required to determine whether Parents' concerns were considered in the 2019 IEP Team meeting at which the relevant IEP was created, *see J.E.*, 229 F. Supp. 3d at 234–35 ("While the [IEP Team] need not adopt a parent's recommendation for any particular aspect of an IEP, . . . 'it may not deprive the Parent of meaningful participation by refusing to consider . . . the Parent's concerns.'" (quoting *E.H.*, 164 F. Supp. 3d at 551)).

Accordingly, the Court remands this issue to the administrative law judge for additional fact-finding. *See T.L. v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 417, 437 (E.D.N.Y. 2013), *appeal dismissed and remanded* (June 26, 2014) ("A district court may remand the proceeding for further development and clarification of the record." (citing, *inter alia*, *D.N. v. N.Y.C. Dep't of Educ.*, 905 F. Supp. 2d 582, 589 (S.D.N.Y. 2012) (finding remand appropriate where administrative hearing officer was "uniquely well suited" to review an issue on the merits))).

The Court notes the following as to the remaining alleged procedural violations, which include: (1) the Board removed objectives from the 2019 IEP; (2) the IEP had an error in the number of service hours being provided to the Student; (3) the IEP lacked measurable objectives; and (4) the Board failed to consider documents from an outside doctor or independent evaluators. *See* Pl.'s Mot. for J. on the Administrative R. at 26–30, ECF No. 29 (Sept. 30, 2021).

As to the first and third alleged procedural violations, Parents have not cited any Second

Circuit authority or case law to support their allegation that the Board's alterations to the IEP constitute procedural violations, much less ones that can result in a denial of FAPE or otherwise argued that the Court should not defer to the Hearing Officer's findings on these issues specifically. Regarding the second, the Court agrees with the school district that this alleged procedural concern amounts to impermissible "[s]peculation" that the school district will not follow the IEP as written. *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 244 (2d Cir. 2015).

Finally, as to the fourth alleged violation, the IDEA does require that the school district "consider[]" evaluations that the parent obtains independently regarding their child, which, at its most basic level, includes reading the evaluations. *See* 34 C.F.R. § 300.502(c); *see also Mr. P*, 885 F.3d at 753–54 (noting that "an [Independent Educational Evaluation] had been adequately 'considered' when it was read by the public school's director of special education" (citation omitted)). As previously noted, however, a procedural violation in and of itself will not necessarily result in a FAPE violation. *See* 20 U.S.C. § 1415(f)(3)(E)(ii); *see also M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 139 (2d Cir. 2013) (stating that "parents must articulate how a procedural violation resulted in the IEP's substantive inadequacy or affected the decision-making process"). The issue of whether this procedural violation resulted in a denial of parents' opportunity to participate in the decision-making process, or otherwise resulted in a denial of FAPE, falls within the scope of the questions the Court has remanded to the administrative law judge, including those clarified in further detail above. As a result, in the absence of further fact-finding, the Court cannot find that the alleged procedural violations individually or cumulatively resulted in a denial of FAPE, as would be required to grant judgment on the administrative record to Parents.

Accordingly, the motion for reconsideration on the alleged procedural violations will be

denied.

### B. Substantive Issues

Parents further argue that this Court is required to grant judgment as a matter of law in favor of private school placement where the parties did not present any additional evidence beyond the administrative record on appeal, and where the Court did not find, as in *E.M. v. New York City Department of Education*, 758 F.3d 442 (2d Cir. 2014), that the Hearing Officer relied on improper evidence, Pl. Mot. at 6–7. Remand is inappropriate, in Parents' view, where the Hearing Officer will be "addressing the same issues under the same record," upon which the administrative hearing officer already offered a conclusion based on her educational expertise. *Id*. at 6.

In response, the Board argues that remand is appropriate where the Court determined that the Hearing Officer failed to make findings regarding the impact of the transition on the Student, the relevant differences in certain parts of the 2018 and 2019 IEPs, and the appropriateness of the proposed placement within a public- school environment in light of Student's medical needs. Opp'n at 4–5. The Board further argues that Parents' motion for reconsideration is inappropriate where it fails to identify any law that precludes such an order from the Court. *Id*.

The Court agrees.

As acknowledged by both parties, this Court has remanded several issues regarding the appropriateness of Student's placement to the Hearing Officer, including: (1) the appropriateness of the timing of Student's transition to the proposed program, given the substantial difficulty with transitions described in the administrative record; (2) relevant differences between the 2018 and 2019 IEPs, including the provision of 1:1 ABA support and consultation services; and (3) the appropriateness of the proposed placement in light of Student's medical needs. Ruling and Order

9

at 28–31. Parents have pointed to no authority to suggest that such questions cannot be remanded, with the guidance provided by this Court, or, conversely, that this Court has the authority to render a decision about the substantive appropriateness of the Student's proposed programming, where the administrative law judge did not address the issues identified above in the first instance.

Where such critical aspects of the appropriateness of Student's programming are not addressed in the record of Hearing Officer's decision, remand is appropriate. *See T.L.*, 938 F. Supp. 2d at 436 ("Remand is appropriate to obtain the necessary educational expertise of the [administrative hearing officer]." (citation omitted)); *J.F. v. N.Y.C. Dep't of Educ.*, No. 12-CV-2184 (KBF), 2012 WL 5984915, at *10 (S.D.N.Y. Nov. 27, 2012) (stating that the appropriateness of a proposed IEP and placement "is a question this Court is ill-equipped to decide" and "involves important questions of educational policy [that] require[] educational expertise to resolve"); *see also J.H. v. Henrico Cnty. Sch. Bd.*, 326 F.3d 560, 568–69 (4th Cir. 2003) (remanding to state-level hearing officer where "the record does not contain findings by the Hearing Officer with respect to" whether FAPE was provided, in relation to several key areas of need); *Henry v. D.C.*, 750 F. Supp. 2d 94, 99 (D.D.C. 2010) (denying cross-motions for judgment on the administrative record where, although "the Court has the authority to undertake its own review of the record and issue judgment in the case, the district court [also] may determine that the 'appropriate' relief is a remand to the hearing officer for further proceedings" (internal citations, quotation marks, and alteration omitted)). The Court therefore need not vacate its prior decision.

Accordingly, the motion for reconsideration will be denied.

V.   **CONCLUSION**

For the foregoing reasons, the motion for reconsideration is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of July, 2022.

      /s/ Victor A. Bolden
    Victor A. Bolden
    United States District Judge